**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Mary Grace Patnik** ) | **CASE NO. 05CV73** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| **Vs.** ) | |
| ) | **Memorandum of Opinion and Order** |
| **Citicorp Bank Trust FSB,** *et al.* ) | |
| ) | |
| **Defendants.** ) | |

**INTRODUCTION**

This matter is before the Court upon Defendants' Motion to Stay All Proceedings Pending Arbitration, filed by all defendants including Citi F.S.B., CitiMortgage Inc., Citibank Service Corporation, Citbank USA, NA, Citicorp Bank Trust, FSB, Citicorp Mortgage Securities Inc., Citicorp, Inc., Citifinancial Credit Company, Citigroup, Inc., Fareed Siddiq, Smith Barney and Smith Barney Private Trust Bank of Michigan. (Doc. 27). Defendant Citibank USA, NA ("Citibank USA") also filed a separate Motion to Stay All Proceedings Pending Arbitration. (Doc. 29). This case arises out of an alleged conspiracy between related corporate entities to

1

defraud plaintiff out of her personal assets as well as assets held in trust for her benefit. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART defendants' motion and GRANTS Citibank USA's motion.

**FACTS**

Plaintiff, Mary Grace Patnik, sues in her individual capacity and as beneficiary of the Albert Patnik Trust. (Compl.).[1] The Trust was created by Albert Patnik for the benefit of his son and plaintiff, his daughter. (Compl. ¶ 19). Plaintiff received the first two of three large Trust distributions in November of 1993 and 1998. (Compl. ¶ 24). Each of these distributions approximated $1,000,000, and plaintiff invested much of that money with Smith Barney in a number of investment accounts. *Id*. Those accounts were managed by her broker Mr. Siddiq. (Compl. ¶¶ 55-56).

After Mr. Patnik died, plaintiff changed the trustees from National City Bank and Theodore Jones to Smith Barney Private Trust Bank of Michigan, a related corporate entity of Smith Barney, on May 29, 1999. (Compl. ¶ 36). At that time, the Trust held $1,162,000 in assets. (Compl. ¶ 35). Following a merger of corporate parent entities, Smith Barney Trust Bank of Michigan became known as Citicorp Trust Bank FSB (collectively, the "Trustee"). Because the Trustee was "appointed by [Mr. Patnik's] children," it was limited to distributing assets for "support, health or education" on an ongoing basis until the final distribution when plaintiff reached 45 years of age. (Compl. ¶¶ 20-21).

All other defendants are related to Smith Barney and the Trustee and are alleged to have

---

[1] All references to the complaint are to plaintiff's first amended complaint. (Doc. 22).

engaged in self-dealing. Because it filed a separate motion, Citibank USA will be referred to by that name while the remaining defendants—Citi F.S.B., CitiMortgage Inc., Citibank Service Corporation, Citicorp Mortgage Securities Inc., Citicorp, Inc., Citifinancial Credit Company, Citigroup, Inc.—will sometimes be referred to as the "Citigroup Entities."

Smith Barney compiled investor profiles describing plaintiff's investment goals and background. Some described plaintiff as a poor credit risk with limited assets while others described plaintiff as an "accredited investor." (Compl. ¶¶ 55-66). According to plaintiff, she was never qualified to be rated as an accredited investor, although it is unclear whether this is due to her lack of sophistication in financial matters (Compl. ¶¶ 62, 64-65) or her failure to meet the monetary threshold. (Compl. ¶ 62). In any event, plaintiff alleges that "Smith Barney merged the assets of the Trust into the natural person of Mary Grace Patnik to create a bogus accredited investor." *Id*. Moreover, while the original trustees strictly limited plaintiff's access to Trust assets (Compl. ¶¶ 34, 37), the successor Trustee allegedly granted her nearly unfettered power to dispose of the assets. (Compl. ¶¶ 46-50). Plaintiff claims that the Trustee allowed much of the Trust management to be conducted by Mr. Siddiq at Smith Barney. (Compl. ¶ 38).

This combination of the fraudulent accredited investor profile and free access to Trust assets allegedly resulted in various transactions involving Smith Barney, the Trustee, Citibank USA and the Citigroup Entities, including the following:

- Plaintiff was granted access to a checking account. Plaintiff alleges that Trust assets were used to pay expenditures from the checking account, including the expenditures of her "paramour" Jeffrey Tippie. (Compl. ¶¶ 69-74). Some of these checks were apparently used by Mr. Tippie to open his own stock trading accounts. (Compl. ¶¶ 107, 126). Mr. Tippie obtained financing for two Cadillacs and a Jaguar based on Trust assets and paid monthly payments on those vehicles from the checking accounts. (Compl. ¶¶ 108-10).

3

- Plaintiff opened a credit card with Citibank USA with a credit line of at least $50,000.  (Compl. ¶ 75).  A credit card of that amount could not have been issued to plaintiff without the accredited investor rating established by Smith Barney. *Id*.  The Trustee paid charges incurred on this credit card out of Trust funds. (Compl. ¶¶ 78, 143-44).

- Plaintiff appointed Mr. Tippie to manage her personal assets.  (Compl. ¶ 81).  She would not have had such authority absent the accredited investor rating established by Smith Barney.  (Compl. ¶ 82).  Plaintiff would not have been allowed to trade stocks on margin without accredited investor status.  (Compl. ¶ 122).  The Trustee allowed the Trust to cover losses from margin calls and other losses in plaintiff's personal investment accounts.  (Compl. ¶¶ 82-84, 117-23).

- Within forty days of the transfer of Trust assets to the Trustee, Smith Barney advised her that she had the financial wherewithal to purchase a $500,000 home. (Compl. ¶ 88).  Financing was based either on the fraudulent title of "accredited investor" or Trust assets.  (Compl. ¶¶ 89-92).  The real estate transaction was financed by Citibank FSB.  (Compl. ¶ 90).  The lender on the transaction was CitiMortgage, Inc., which extended an additional $100,000 in credit for a security deposit.  (Compl. ¶ 94).  Payments on the mortgage exceeded $70,000 per year and could only be paid from the Trust.  (Compl. ¶ 99).  This was more than six times the annual expense of her previous mortgage.  (Compl. ¶ 103).  Plaintiff sold the home for $520,000 four years later, after having paid $204,408.40 in mortgage payments.  *Id*.

Each defendant's involvement in the scheme can be summarized as follows: 1) Smith Barney and Mr. Siddiq used Trust assets to create a fraudulent investor profile that allowed plaintiff to deplete her personal wealth and incur indebtedness to related corporate entities; 2) Citicorp Mortgage and Citibank FSB made improper home loans to plaintiff based on the fraudulent investor profile established by Smith Barney; 3) Citibank USA and the other Citigroup Entities allowed plaintiff to incur indebtedness based on the fraudulent investor profile established by Smith Barney; and 4) the Trustee was under the *de facto* control of Smith Barney and breached its duties under the Trust instrument by allowing access to Trust assets through a checking account and reimbursing Smith Barney, Citibank USA and the Citigroup Entities for the personal indebtedness of defendant.

Plaintiff contends that defendants defrauded her of $1,100,000 from her personal accounts and $1,047,000 of Trust assets.  (*See* Compl. ¶ 225).  She asserts fourteen claims against the defendants.  Counts 1 and 2 are federal RICO claims that involve all defendants.  (Compl. ¶¶ 164-74).  Count 6 falls under federal securities laws and focuses on Smith Barney's certification of plaintiff as an accredited investor.  (Compl. ¶¶ 194-98).  Count 9 alleges federal truth in lending violations by Citicorp Mortgage.  (Compl. ¶¶ 205-10).  Count 10 alleges mail fraud against the Trustee and Smith Barney.  (Compl. ¶¶ 211-14).  The remaining claims are state-law claims of larceny by trick, crimes of moral turpitude, fraudulent real estate investment, bad faith, causing tortious injury, breach of fiduciary duty, conversion, embezzlement and breach of contract.

## DISCUSSION

Although defendants' motion is captioned as a single "motion to stay pending arbitration," the legal basis for a stay differs depending on the particular defendant.  Smith Barney seeks a stay under the statutory demand of the Federal Arbitration Act, 9 U.S.C. § 3.  Citibank USA filed a separate motion claiming that any claims against it must be submitted to arbitration under the agreements with Smith Barney.  As part of defendants' motion, the Trustee argues that *Colorado River* abstention requires the Court to stay claims against it pending the resolution of Michigan probate court proceedings.  Finally, all defendants except Smith Barney seek a discretionary stay of any remaining claims pending the conclusion of mandatory arbitration against Smith Barney.  Each of these arguments will be addressed in turn.

**1.     Smith Barney's Motion to Stay Pending Arbitration**

STANDARD OF REVIEW

5

Defendant Smith Barney moves to stay all proceedings against it pending arbitration. Plaintiff opposes the motion. The Federal Arbitration Act requires courts to stay actions that are referable to arbitration. 9 U.S.C. § 3. Courts perform the following four-step analysis:

1) Determine whether the parties agreed to arbitrate;

2) Determine the scope of the agreement;

3) If federal statutory claims are involved, assess whether Congress intended those claims to be nonarbitrable; and

4) If only some of the claims are subject to arbitration, determine whether the remaining claims should be stayed.

*Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). Any doubts regarding arbitrability should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

DISCUSSION

The first issue is whether the parties agreed to arbitrate. Smith Barney contends that plaintiff signed arbitration agreements on multiple occasions. Plaintiff responds that defendants attached false documents to the motion to stay and withheld other documents. In support of these accusations, plaintiff attaches documents which she contends are the actual account documents. Response Ex. 4. However, plaintiff agreed to arbitrate her claims in eight of the account opening documents that she claims are authentic. Reply Ex. A-H. She has also admitted through discovery that she signed contracts that include arbitration agreements. Reply Ex. I. Thus, even accepting plaintiff's allegations as true, she undoubtedly signed arbitration

6

agreements on numerous occasions.[2]

Plaintiff also argues that the arbitrable claims are "intertwined" with her claims against the Trustee, a party without its own arbitration agreement.  However, the Supreme Court has explicitly rejected the "doctrine of intertwining."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 216-17 (1985).  Assuming for the sake of argument that the claims against the Trustee must be decided here, the Court would still be required by the Arbitration Act to stay all other claims within the scope of the arbitration clause no matter how closely they relate to the claims against the Trustee.  *Id*.

The next step is to establish the scope of the arbitration clause.  Smith Barney asserts that all of plaintiff's claims against it fall under the arbitration clause.  Plaintiff expressly declines to address the issue.  In any event, Smith Barney is correct.  The Sixth Circuit distinguishes between "broad" and "narrow" arbitration clauses.  *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005).  If the arbitration clause is broad, all claims are reserved for arbitration absent an express provision excluding a particular dispute or the most forceful evidence of an intent to exclude a particular claim.  *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004).  A claim falls outside of the scope of the arbitration agreement only if it could be maintained without reference to the contract or transaction subject to the agreement.  *Fazio*, 340

---

[2] Moreover, whether there was fraud in the creation of the brokerage contracts is itself an issue reserved for the arbitrator, since plaintiff challenges the validity of the whole agreement rather than the arbitration clause alone.  *See Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483, 491 (6th Cir. 2001) (explaining that only defenses specifically related to the making of the arbitration agreement, as opposed to the contract as a whole, may be resolved by the district court).

7

F.3d at 395.

A broad arbitration clause uses language such as "any dispute arising out of an agreement . . . ." *Simon*, 398 F.3d at 775.  The arbitration clause at issue here governs "all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between me and [Smith Barney] and/or any of its present or former officers, directors, or employees concerning or arising from" the following:

1) "any account maintained by me with [Smith Barney]";[3]

2) "any transaction involving [Smith Barney] or any predecessor firms . . . and me, whether or not such transaction occurred in such account or accounts"; or

3) "the construction, performance or breach of this or any other agreement between us, any duty arising from the business arising from the business of [Smith Barney] or otherwise[.]"

Reply Ex. A-H.

This qualifies as a broad arbitration clause, and expressly covers all of plaintiff's claims against Smith Barney.  The foundation for plaintiff's claims is the accredited investor profile attached to plaintiff's accounts by Smith Barney.  Plaintiff alleges that Smith Barney sat at the top of a conspiratorial network, directing numerous transactions with related entities that led to the diminution of her personal assets and assets held for her benefit in the Trust.  Therefore, all of plaintiff's claims against Smith Barney necessarily involve either the accounts or transactions

---

[3] Each of the arbitration clauses, by its express language, covers all other accounts established with Smith Barney.  Thus, even if some of the eight arbitration agreements were somehow falsified or incorrect, one valid agreement standing alone would cover all of plaintiff's Smith Barney accounts.

8

directed by Smith Barney on plaintiff's behalf. At the least, plaintiff alleges that all of its claims against Smith Barney were "part of the same fraudulent scheme" involving her accounts and any doubts about arbitrability must be resolved in favor of arbitration. *Fazio*, 340 F.3d at 396. Plaintiff has not even attempted an argument to the contrary. The Court therefore finds that all of plaintiff's claims against Smith Barney are within the scope of the arbitration clause.

The third step recognizes that certain federal statutory claims might be exempt from arbitration pursuant to the will of Congress. The party opposing arbitration has the burden to demonstrate that Congress intended to preclude the voluntary waiver of judicial remedies. *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Plaintiff has not addressed this issue at all. Even if plaintiff had done so, the Supreme Court has already held that RICO and Exchange Act claims are subject to arbitration. *Id.* at 238, 242.

The fourth step asks whether other claims should be stayed while the arbitrable claims are arbitrated. All of the claims against Smith Barney are subject to arbitration. A stay of claims against the remaining defendants is discussed in the following sections.

### 2. Citibank USA's Motion to Stay Pending Arbitration

Defendant Citibank USA also moves for a mandatory stay, arguing that plaintiff's claims against it are subject to arbitration under the Smith Barney agreement.[4] Plaintiff provides no

---

[4] Citibank USA was a party to defendants' combined motion and also filed a separate motion arguing that it is covered by the Smith Barney arbitration agreement. Smith Barney and Citibank USA are the only defendants to timely move for a stay pursuant to the arbitration agreement. The Court does not reach whether plaintiff's claims against the remaining defendants are subject to arbitration because none of the other defendants sought such a determination on a timely basis. Although the Trustee argued that claims against it are subject to arbitration, it did not do so until its

9

substantive response to the motion. Citibank USA argues that it is covered by the express language of the arbitration clause.[5] "Smith Barney" (which is alternatively referred to as "SB" or "SSB" in the arbitration agreements) is defined elsewhere in the agreement as "[Salomon] Smith Barney Inc. or its direct or indirect subsidiaries and affiliates or their successors or assigns." Citibank USA also argues that plaintiff's claims against it are subject to arbitration under third-party beneficiary and estoppel theories.[6] In support, Citibank USA notes that those theories relate to "intertwined" claims and cites plaintiff's own admissions that the claims against Citibank USA are intertwined with the claims against Smith Barney.

Plaintiff does not challenge Citibank USA's motion, but instead argues that she did not agree to arbitrate with Smith Barney in the first place. The Court has already concluded that plaintiff agreed to arbitrate all of her claims against Smith Barney. In light of plaintiff's failure to provide any meaningful response, Citibank USA's motion to stay all claims in favor of arbitration between plaintiff and Citibank USA will be granted.

**3.** *Colorado River* **Abstention**

STANDARD OF REVIEW

---

reply brief. The Court concludes that as to the Trustee this issue was not properly presented.

[5] Agreements to arbitrate are interpreted in the same manner as other contracts. *Volt Info. Scis., Inc. v. Bd. Of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

[6] Third-party beneficiaries to an arbitration clause may invoke the arbitration clause. *Vestax Sec. Corp. v. McWood*, 116 F. Supp. 2d 865, 868 n.4 (E.D. Mich. 2000). A signatory to an agreement to arbitrate is estopped from avoiding arbitration against a nonsignatory when the claims against the nonsignatory are intertwined with the agreement. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003).

The Trustee moves for a stay of claims against it pending the outcome of Michigan probate proceedings. Plaintiff opposes the motion. The general rule places upon a federal district court a virtually unflagging obligation to hear cases within its jurisdiction despite the pendency of parallel state-court litigation. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Nonetheless, *Colorado River* abstention permits a federal court to defer to pending state court proceedings under exceptional circumstances. *Moses H. Cone,* 460 U.S. at 16. Factors to be considered include the following: 1) whether the state court has assumed jurisdiction over any res or property; 2) the inconvenience of the federal forum; 3) avoidance of piecemeal litigation; 4) the order in which jurisdiction was obtained; 5) whether the source of governing law is state or federal; 6) the adequacy of the state court action to protect the federal plaintiff's rights; 7) the relative progress of the state and federal proceedings; and 8) the presence or absence of concurrent jurisdiction. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001). These factors are not to be treated as a checklist; the factors must be balanced as they apply to a particular case. *Moses H. Cone*, 460 U.S. at 16. The balance weighs heavily in favor of jurisdiction, and only the clearest of justifications will warrant *Colorado River* abstention. *Id*.

DISCUSSION

Before plaintiff filed this action, the Trustee initiated proceedings in Michigan probate court seeking a final accounting and discharge of its duties as Trustee. Brief Ex. C. According to the Trustee, the Michigan probate court has exclusive jurisdiction over the Trust. The Trustee asserts that the probate court will necessarily decide whether the Trustee's administration of the Trust was proper in adjudicating that petition. The Trustee also claims that while plaintiff is not

11

a party to the proceedings, she has demonstrated through her filings that she is capable of representing her interests before the Michigan court.  Finally, the Trustee alleges that leaving the Trust issues to the Michigan court will avoid piecemeal litigation.

Plaintiff contests the Trustee's depiction of the Michigan proceedings.  She responds that, at her urging, the Michigan court has thus far declined to exercise jurisdiction over the Trust.  Response Ex. 5, 6.  Plaintiff's jurisdictional challenge rests in part on her assertion that the probate court does not have jurisdiction over her allegations of self-dealing and breach of fiduciary duty by the Trustee.  She also claims that the administration of the Trust is governed by Ohio law.  According to docket entries submitted by plaintiff, the Michigan court has not yet decided whether it has jurisdiction over the case.  The Trustee does not dispute that the jurisdictional issue has not been decided.

The Trustee simply has not demonstrated the type of exceptional circumstances that justify *Colorado River* abstention.  Contrary to the Trustee's assertion, "[t]he fact that the Michigan Probate Court has yet to determine whether or not it has jurisdiction" is extremely relevant.  Whether the state court has assumed jurisdiction over any res or property is the first factor set forth in *Colorado River.*  424 U.S. at 818.  The fact that the state court has not yet decided whether it has jurisdiction also diminishes any weight assigned to the first-filed action.

One basis for plaintiff's challenge to the state proceedings is that the probate court is not the proper forum to adjudicate all of the issues relevant to the administration of the Trust.  This implicates concerns that piecemeal litigation will result if the Court does abstain.  Although the propriety of the Trustee's administration of the Trust is largely a state law issue, Plaintiff has so far successfully asserted in Michigan state court that the Trust should be governed by Ohio law,

12

a fact that substantially reduces the weight to be given the state law nature of the Trustee's probate action. Moreover, while plaintiff has challenged the jurisdiction of the state court, she is not even a party to the underlying proceeding. The Trustee has not demonstrated that the state forum is adequate to protect her rights. Finally, the relative progress of the proceedings favors neither plaintiff nor the Trustee, since neither forum has moved to the merits of the case.

Viewing these facts as a whole, it is clear that the Trustee has not met its burden.[7] Accordingly, the Court will not abstain under *Colorado River*.

### 4. Stay of Proceedings Against All Other Defendants Pending Smith Barney Arbitration

STANDARD OF REVIEW

Finally, all defendants move to stay all proceedings pending arbitration of plaintiff's claims against Smith Barney. Plaintiff does not expressly oppose the motion. A court has discretion to stay claims against nonsignatories pending the outcome of arbitration between the parties to an arbitration agreement. *Moses H. Cone*, 460 U.S. at 20 n.23. A stay is justified when a lawsuit against a nonsignatory depends upon the same facts and is inherently inseparable from the arbitrable claims. *Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002).

---

[7] The Trustee's quotation to *Meredith v. Winter Haven*, 320 U.S. 228 (1943), confuses *Colorado River* abstention—a limited abstention doctrine wherein exceptional circumstances force the federal court to abstain pending duplicative state-court proceedings—with *Pullman* abstention's desire to avoid premature resolution of federal constitutional questions when a state-court decision might moot the constitutional issue. *See id.* at 236 (citing *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1943) and other cases applying the "salutary policy of refraining from unnecessary constitutional decisions"). The Trustee has not suggested that any constitutional issues might surface here.

13

Courts should also consider whether an independent action against the nonsignatories would involve significant expense and inconvenience. *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997).

DISCUSSION

Plaintiff does not expressly oppose defendants' request for a discretionary stay pending arbitration. Plaintiff simply argues that no agreement to arbitrate existed in the first place. The Court has already concluded that all claims against Smith Barney are subject to arbitration, and will now address whether to exercise its discretion in favor of a stay.

Defendant characterizes the claims against the remaining defendants as "tail-wagging-the-dog type of claims." Brief at 13. This comports with plaintiff's own description of its claims as a conspiracy controlled by Smith Barney. According to plaintiff, "the Trust account and Plaintiff's personal accounts were handled as if they were one and the same." Response at p. 15. Through its agent Fareed Siddiq, Smith Barney allegedly directed the activities of the Trustee. Compl. ¶¶ 38-39. Smith Barney's activities also form the basis for plaintiff's claims against Citibank USA and the Citigroup Entities. The fees and debts at issue resulted from Smith Barney's creation of a fraudulent accredited investor profile. Compl. ¶ 63.

Smith Barney not only controlled the conspiracy, but the claims against Smith Barney are inseparable from the claims against the remaining defendants. As plaintiff has stated, "[t]here is no way to separate her individual accounts from this Trust account." Response at p. 3. "Defendants' mis-management of the Trust accounts is inextricably intertwined with Plaintiff's 10 personal accounts. . . . All of the Defendants are related to one another and all of the Defendants have swindled Plaintiff." Response at p. 15. In light of plaintiff's allegations and

14

admissions that the claims against the remaining defendants are "inextricably intertwined" with the claims against the defendant that controlled the accounts, Smith Barney, this factor weighs heavily in favor of a stay.

Efficiency concerns also favor a stay. Defendants point out that the resolution of the claims against Smith Barney might be dispositive of the remaining claims. Plaintiff does not dispute this. In light of plaintiff's allegations that the debts to Citibank USA and the Citigroup Entities were incurred as a result of the fraudulent investor profile and that Smith Barney had *de facto* control of the Trust, the Court has no reason to dispute defendants' representation either. This factor also weighs heavily in favor of a stay.

Plaintiff has not argued that a discretionary stay pending the arbitration of claims against Smith Barney would cause her prejudice or hardship. Accordingly, all claims against the remaining defendants[8] should be stayed pending the outcome of arbitration against Smith Barney.  **CONCLUSION**

For the foregoing reasons, the Court GRANTS a stay of all proceedings against defendants Smith Barney and Citibank USA pending the completion of arbitration pursuant to 9 U.S.C. § 3. The remaining defendants' motion for a discretionary stay pending resolution of arbitration with Smith Barney is also GRANTED. Although the Trustee's motion to abstain pursuant to *Colorado River* abstention is DENIED, all claims against it are stayed pursuant to the Court's discretionary stay Order.

---

[8] This includes all defendants—the Trustee, Mr. Siddiq and the Citigroup Entities—other than Smith Barney and Citibank USA, which are entitled to a stay under the arbitration agreement.

15

IT IS SO ORDERED.

                                              /s/ Patricia A. Gaughan  
                                              PATRICIA A. GAUGHAN  
                                              United States District Judge

Dated: 10/31/05